UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

|  |  |  |
|---|---|---|
| | : | |
| PROJECT VOTE, *et al.* | : | CASE NO. 1:08-cv-2266-JG |
| | : | |
| Plaintiffs, | : | JUDGE JAMES S. GWIN |
| | : | |
| vs. | : | OPINION AND ORDER |
| | : | [Resolving Doc. 7.] |
| MADISON COUNTY BOARD | | |
| OF ELECTIONS, *et. al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this case, the Plaintiffs ask this Court to issue a temporary restraining order, preliminary injunction, permanent injunction and declaratory judgment with regard to the right of later-registering Ohio voters to use absentee ballots.  The parties dispute whether a properly qualified voter who registers near the Ohio 30-day cut-off for registration can request an absentee ballot immediately after registration  or must wait 30 days after registration before requesting an absentee ballot.

Defendant Ohio Secretary of State Jennifer Brunner takes the position that recent, but properly registered voters, can utilize Ohio's absentee voting procedure.  She issued Directive 2008-63, that requires county boards of elections to "register [an] applicant and issue an absentee ballot . . . at the time of registration."[1/]  Directive 2008-63.  Defendant Madison County Board of Elections

---

[1/] While the Plaintiffs generally agree with Secretary of State Brunner's position in this case, the Plaintiffs have named Brunner as a Defendant because they seek an injunction requiring her to force Ohio counties to follow her Directive 2008-63.

Case No. 1:08-2266
Gwin, J.

disagrees.  Relying upon an opinion letter from Madison County Prosecuting Attorney Stephen Pronai, Defendant Madison County takes the position that absentee ballots cannot be distributed to persons who have not been registered for at least 30 days before receiving the absentee ballot. Consistent with the position taken by Madison County, two Ohio voters have petitioned the Ohio Supreme Court, seeking mandamus to compel Defendant Brunner to disallow votes from Ohio citizens who were not registered 30 days before seeking an absentee ballot.  Case No. 08-1813.

The Plaintiffs seek declaratory judgment that a 30-day qualification period violates federal statutory and constitutional law. [Doc. 1 at 17-18.] The Plaintiffs also ask for a Temporary Restraining Order and Injunction to require the Defendants to conduct the absentee voting process without the 30-day absentee voter qualification period. [Doc. 2-3.] If the Ohio Supreme Court interprets Ohio law to require no 30-day waiting period, the Plaintiffs instead seek an injunction that the Defendant Madison County comply with the Ohio Supreme Court and issue absentee ballots without a 30-day waiting period, and that Defendant Brunner use all available means to ensure that all counties in the State issue absentee ballots without the 30-day waiting period.

Candidly, the underlying merits of issues are not even close.  With regard to the interpretation of Ohio law, Defendant Brunner obviously determined the issue correctly.  As described below, Defendant Madison County's position runs wholly contrary to the Ohio statutory scheme.  That scheme calls for voters' eligibility to be determined with regard to the date of the election, not the date that an absentee ballot is requested.  Madison County's position would lead to illogical results, potentially disenfranchising large numbers of voters.  As important, Madison County's position directly conflicts with federal election law.  Under that law, "State[s] shall provide by law for the casting of absentee ballots for the choice of electors for President . . . *who have applied therefor not*

-2-

Case No. 1:08-2266
Gwin, J.

*later than seven days immediately prior* to such election and have returned such ballots to the appropriate election official of such State not later than the time of closing of the polls in such State on the day of such election." In plain terms, this federal provision requires that absentee ballots be given to voters when such voters have requested the ballots at least seven days before the election. Because Madison County's interpretation conflicts with this, and other provisions, it cannot stand under the Supremacy Clause.

## I. Background

*I.A. Procedural background.*

Plaintiffs filed this action on September 24, 2008. The sued the Ohio Secretary of State and the Madison County Board of Elections[2/]. With their action, the Plaintiffs seek an injunction restraining Madison County. Earlier, certain parties had filed factually related mandamus petition with the Ohio Supreme Court. With that petition, the relator sought to compel the Secretary of State to rescind an interpretation of Ohio election law that the Secretary had issued.

After this action was filed, a later-filed case was presented to the United States District Court for the Southern District of Ohio. Southern District of Ohio Case No. 2:08-cv-00913. A motion to transfer venue to this Court was made in that case, arguing that the first filed rule should apply but that Court denied the motion. Although this Court had already set this matter for hearing on Plaintiffs' motion for a temporary restraining order, the Southern District of Ohio Judge cancelled a previously scheduled hearing before that Court and moved the hearing earlier, apparently in an unseemly attempt to be able to rule first. That such lack of comity is unseemly understates.

In deciding whether to apply the first-filed rule, the Court where a controversy is first filed

---

[2/]In this opinion, the Court refers to Madison County Board of Elections as "Madison County".

Case No. 1:08-2266
Gwin, J.

should determine which case should go forward. *Daimler Chrysler Corp. v. General Motors Corp.*, 133 F.Supp.2d 1041 (N.D. Ohio 2001). In *Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County,* 542 F.Supp. 1317, 1320 (S.D.N.Y.1982), the court identified the first-filed rule applies in the broad majority of case. In determining whether there are special circumstances justifying disregarding the first to file rule, that Court held that "the district court hearing the first-filed action should determine whether special circumstances dictate that the first action be dismissed in favor of a later-filed action." Id. at 1321. In other words, the normal rules give this Court, not the Southern District of Ohio, the decision whether special circumstances exist to disregard the normal protocol that the first filed case proceed. A large body of case law directs the court which first obtained jurisdiction to determine whether it should retain the case or let it proceed in the court of second filing.

Courts receiving second-filed substantive actions to proceed in place of first-filed complaints have held that "[w]here two identical actions are filed in courts of concurrent jurisdiction the court that first acquired jurisdiction should try the lawsuit." *Fidelity Bank v. Mortgage Funding Corp. of America*, 855 F.Supp. 901, 903 (N.D.Tex.1994) ( citing Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 96 (9th Cir.1982) (declaratory judgment action by bank to determine whether it properly terminated loan agreement)).

Simply described, this Court, not the Southern District of Ohio, should have determined whether special circumstances warranted a disregard of the general rule.

I.B.    *Competing Interpretations of Ohio Election Laws*

In 2005, the Ohio Legislature enacted Substitute House Bill 234 of the 126th General Assembly. Before House Bill 234, an otherwise qualified Ohio voter could apply for an absentee

-4-

Case No. 1:08-2266
Gwin, J.

ballot in only limited situations.  O.R.C. 3509.04.[3/] But House Bill 234 eliminated these specific

legitimate reasons: "Any qualified elector may vote by absent voter's ballots at an election."  O.R.C.

§ 3509.02.  This new system of absentee voting has been referred to as "no-fault absentee voting."

Because of this change in Ohio law, the Ohio Secretary of State Brunner expected Ohio

boards of elections to receive many more absentee applications for the coming 2008 election than in

previous years.[4/]  Under Ohio law, the "secretary of state is the chief election officer of the state, with

such powers and duties relating to the registration of voters and the conduct of elections."  O.R.C.

§ 3501.04.  Pursuant to this authority, the secretary of state issues "directives . . . to members of the

boards [of elections] as to the proper methods of conducting elections."  O.R.C. § 3501.05(B).   On

August 13, 2008, Secretary of State Brunner issued Directive 2008-63, which generally requires

boards of elections to provide voters with absentee ballots after the voters have registered:

> Board of elections are required to develop procedures to immediately register the
> applicant and issue an absentee ballot to the newly registered elector of the county at
> the time of registration, reserving the right to delay registration and immediate
> absentee voting if a board is not satisfied as to validity of the application and the
> applicant's qualifications.

Directive 2008-63.

In Ohio counties, the county prosecuting attorney serves as the legal advisor of the county

board of elections.  O.R.C. § 309.09(A).  In response to Directive 2008-63, several county

prosecuting attorneys expressed concern about a potential conflict between Ohio law and Directive

---

[3/] The statute restricted the reasons justifying an absentee ballot.  Before House Bill 234, applicants for an absentee ballot generally needed to show that: "I shall be absent from the county on the day of the election."  House Bill 234 changed Ohio law to say: "Any qualified elector may vote by absent voter's ballots at an election." O.R.C. 3509.02.

[4/] Directive 2008-63 ("[T]he boards also should expect to receive large numbers of absentee ballot applications along with the registration applications.").

Case No. 1:08-2266
Gwin, J.

2008-63.[5/]  On September 5, 2008, in response to Brunner's Directive 2008-63, Madison County

Prosecuting Attorney Stephen Pronai issued a memorandum saying that Directive 2008-63 violated

Ohio election laws.  Pronai said that 2008-63 violated the Ohio requirement that an absentee voter

be registered for 30 days before requesting an Ohio absentee ballot.  The Defendant Madison County

Board of Elections stated that it will not follow Directive 2008-63, but instead will require that a

registered voter wait for a 30-day qualifying period before receiving an absentee ballot.

The concerned prosecuting attorneys found Directive 2008-63 incompatible with several

provisions of the Ohio Revised Code.  Ohio Revised Code section 3509.02 states that, "[a]ny

*qualified elector* may vote by absent voter's ballots at an election."  O.R.C. § 3509.02(A) (emphasis

added).  This "qualified voter" language is echoed in the requirements imposed on the director of a

county board of elections: a director of a board of elections "shall deliver to the applicant . . . proper

absent voter's ballots," "if the director finds that the applicant is a *qualified voter*."  O.R.C. § 3509.04

(emphasis added).

Ohio Revised Code section 3501.01(N) defines a qualified elector as "a person having the

qualifications provided by law to be entitled to vote."  Section 3503.01 states:

> Every citizen of the United States who is of the age of eighteen years or over and who
> has been a resident of the state thirty days immediately preceding the election at which
> the citizen offers to vote, is a resident of the county and precinct in which the citizen
> offers to vote, *and has been registered to vote for thirty days*, has the qualifications
> of an elector and may vote at all elections in the precinct in which the citizen resides.

---

[5/] Letter of Steve Knowling, Holmes County Prosecuting Attorney ("I find [Directive 2008-63] is without legal
foundation and should be disregarded."); Letter of Gary Nasal, Miami County Prosecuting Attorney ("It is my opinion,
and you are advised that the suggestion that your office engage in same day registration and voting in a manner which
is contrary to Ohio law . . . is illegal, inappropriate, and impermissible."); Letter of Stephen Pronai, Madison County
Prosecuting Attorney ("[A]ccording to the law you cannot issue an absentee ballot until the voter has been registered
for 30 days. . . . I urge the Board of Elections to follow the law as statute in the Ohio Revised Code.").

Case No. 1:08-2266
Gwin, J.

O.R.C. §3505.01.

Pulling these various statutory provisions together, the Madison County Prosecutor argues that only a qualified elector can request an absentee ballot. In summary, he argues that a voter cannot be a qualified elector unless the voter has already been registered to vote for 30 days. He says that giving a voter an absentee ballot after registration without waiting the statutorily required 30 days, would violate Ohio law.

Responding to these arguments, Defendant Secretary Brunner says Defendants misconstrue Ohio law and that if such misinterpretation were accepted it would, necessarily, violate federal law. Defendant Brunner reasons that Ohio R.C. § 3503.01 defines qualified electors as "[e]very citizen of the United States who is of the age of eighteen years or over and who has been a resident of the state thirty days immediately preceding the election at which the citizen offers to vote." She interprets this to fix the date of the election as the date qualification need be determined, not the date the absentee ballot is given.

Secretary Brunner suggests support for her interpretation that qualification to vote need be determined by reference to election date from Ohio R.C. § 3503.06, which provides:

> (A) No person shall be entitled to vote at any election, or to sign or circulate any declaration of candidacy or any nominating, or recall petition, unless the person is registered as an elector and will have resided in the county and precinct where the person is registered for at least thirty days *at the time of the next election*.

O.R.C. 3503.06. (Emphasis added.).

She also argues that the Madison County Prosecutor's position leads to absurd results. R.C. 3509.03(G) requires an absentee ballot applicant to certify he is a "qualified elector." Similarly, R.C. 3509.04(B) requires an election official confirm that the applicant is a "qualified elector." But R.C.

Case No. 1:08-2266
Gwin, J.

§3503.01 defines qualified electors as persons who "is a resident of the county and precinct in which the citizen offers to vote." If the determination of whether an elector is qualified need be determined by reference to the date the absentee ballot is obtained, how could any applicant guarantee that she will necessarily remain a resident of the county and precinct on election date. With other arguments, Defendant Secretary claims Defendant Madison County's position misinterprets Ohio law.

I.C.    *The Timing of the Election*

For the upcoming 2008 election, Ohio citizens can continue to register until October 6, 2008, 30 days before the November 6, 2008 election. The county boards of elections can start distributing absentee ballots on September 30. .  Assuming that Secretary Brunner's interpretation of Ohio law is correct, voters registering between September 30 - October 6, 2008, could immediately request and receive an absentee ballot.  Assuming, however, that Pronai's interpretation of Ohio law is correct, a voter registering on September 30 could not request or receive an absentee ballot until October 30.  This request could not be made until 6 days before the November 4 election.

## II.  Analysis

Before moving on to the merits of the case, this Court will first discuss arguments that this Court should abstain from deciding this case because of the unsettled state law claims here.  After a discussion of abstention, this Court will outline the standard governing a temporary restraining order and address the Plaintiffs' merits arguments under that standard.

II.A.  *Abstention*

II.A.1. *Pullman-type Abstention and Constitutional Law: a district court should abstain from deciding a novel federal constitutional issue when the need to resolve the federal constitutional issue depends on the interpretation of unsettled state law.*

The Supreme Court has held that: "federal courts should abstain from decision when difficult

Case No. 1:08-2266
Gwin, J.

and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984). This doctrine is called Pullman-type abstention after the case in which it was first articulated, *Pullman v. Texas*, 312 U.S. 496 (1941). Abstention allows federal courts to "avoid both unnecessary adjudication of federal questions and 'needless friction with state policies.'" *Midkiff*, 467 U.S. at 236 (citations omitted). One federal appeals court has held that a court must find three factors present before abstaining:

> Three factors must be present before a district court may abstain under the Pullman doctrine: "(1) the complaint must involve a 'sensitive area of social policy' that is best left to the states to address; (2) 'a definitive ruling on the state issues by a state court could obviate the need for [federal] constitutional adjudication by the federal court'; and (3) 'the proper resolution of the potentially determinative state law issue is uncertain.' "

*Fireman's fund Ins. Co. V. City of Lodi, California*, 302 F.3d 928, 938-940 (9th Cir. 2002) (citations omitted).

Here, the interpretation of Ohio election law is an area of sensitive social policy that, if possible, is best left for the Ohio Supreme Court to decide. If the Ohio Supreme Court concludes that Directive 2008-63 is valid under Ohio state law, the Plaintiffs' will no longer be challenging the constitutionality of the statute, but will instead be asking this Court to enforce the Ohio Supreme Court's interpretation of the law. Finally, the interpretation of this state law issue is uncertain. Although Secretary of State Brunner has much greater responsibility for interpretations of Ohio election laws, several county prosecuting attorneys have interpreted the Ohio laws differently.

Based on the above analysis, this Court should allow the Ohio Supreme Court to rule on this issue. But if the Ohio Supreme Court does not act on this issue before absentee ballots can be

Case No. 1:08-2266
Gwin, J.

distributed on September 30, an argument can be made that the prejudice caused by the delay of abstention mandates action by this Court.  As the Seventh Circuit Court of Appeals noted, "the Supreme Court recently has recognized that in appropriate circumstances harms such as delay can outweigh the need for clarification and dictate that abstention be avoided." *Lister v. Lucey*, 575 F.2d 1325, 1333 (7th Cir. 1978) (citing *Mayor v. Educational Equality League*, 415 U.S. 605, 628 (1974)).  The Fifth Circuit Court of Appeals has also noted that, "[t]he kind of delay that argues against abstention is delay that might significantly impair constitutional rights." *Nissan Motor Corp. v. Harding*, 739 F.2d 1005, 1011 (5th Cir. 1984).

If the Ohio Supreme Court does not act before September 30, voters across Ohio may be potentially disenfranchised.  This interest is sufficient to cause this Court not to abstain from the matter.

> *II.A.2. Pullman-type Abstention and Federal Statutory Law: a district court generally should resolve both the state and federal law issues.*

While the Plaintiffs make several constitutional claims, they also claim that the Madison County interpretation of the Ohio election laws violates federal statutory law–the Voting Rights Act, 42 USC § 1973aa-1, and the National Voter Registration Act, 42 USC § 1973gg-6.  When federal statutory rights are implicated, the Supreme Court has held that the purposes favoring abstention are not as present.  The Supreme Court has held, however, that "[w]here a case involves a nonconstitutional federal issue . . . the necessity for deciding which depends upon the decision on an underlying issue of state law, the practice in federal courts has been, when necessary, to decide both issues." *Propper v. Clark*, 337 U.S. 472, 490 (1949).

The Plaintiffs also allege a violation of federal statutory law.  As the Supreme Court has

Case No. 1:08-2266
Gwin, J.

suggested, a district court need not abstain in a case involving state and federal statutory law.

Accordingly, this Court will not abstain from deciding this case.

### III.  Temporary Restraining Order

This Court will first lay out the standard governing a temporary restraining order and then

analyze the Plaintiffs' statutory and constitutional claims under this standard.   The Court applies the

traditional four-part test to determine whether a temporary restraining order is appropriate.   The

Court must consider whether: (1) there is a substantial likelihood of success on the merits, (2) the

temporary restraining order is necessary to prevent irreparable injury, (3) the injury to the plaintiff

outweighs any harm to the nonmovant, and (4) the temporary restraining order would serve the public

interest.  *See, e.g., McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th

Cir. 1997).  A district court need not make specific findings on each factor, if fewer factors dispose

of the issue.  *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.,* 119 F.3d 393, 399 (6th Cir.

1997).

As the Supreme Court held in *Brock v. Roadway Express, Inc*., 481 U.S. 252, 274 (1987),

"there are . . . situations in which the threat of irreparable injury justifies the entry of temporary orders

that are not preceded by an adequate hearing."  Federal Rule of Civil Procedure 65(b) describes the

circumstances in which such an action may be taken.  This Rule allows a judge to grant a temporary

restraining order (TRO) "without written or oral notice to the adverse party or its attorney" only if

it clearly appears that "immediate and irreparable injury, loss, or damage will result" otherwise. The

TRO expires after 10 days or less, and an adversarial hearing must be scheduled "at the earliest

possible time," taking precedence over "all matters."  Fed. R. Civ. P. 65(b); *see also First Tech.*

*Safety Sys., Inc. v. Depinet*,11 F.3d 641, 650 (6th Cir. 1993) ("A temporary restraining order may

Case No. 1:08-2266
Gwin, J.

be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.").

Courts have tended to grant TROs without notice under Rule 65(b) in two situations.  First, courts have issued ex parte TROs when parties have shown that it is impossible to give notice to the adverse parties because their identities or locations are unknown.  *First Tech. Safety Sys.*, 11 F.3d at 650. Second, courts have granted TROs without a hearing when a party has show that "proceeding ex parte is the 'sole method of preserving a state of affairs in which the court can provide effective final relief.'" *Adobe Sys., Inc. V. S. Sun Prods., Inc.*, 187 F.R.D. 636, 639 (S.D. Cal.1999) (citing *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir.1979) (per curiam)); *see also Little Tor Auto Ctr. v. Exxon Co.*, 822 F. Supp. 141, 143 (S.D.N.Y. 1993) (holding that ex parte TROs can issue in a variety of circumstances, such as "where irreparable injury will be caused absent prompt judicial intervention in circumstances where the adversary cannot be contacted, or where advance contact with the adversary would itself be likely to trigger irreparable injury.").

This case is not a traditional ex parte TRO case, as both the Plaintiffs and the Defendants have had notice of the matter at issue and have filed briefs in this case, which the Court has reviewed.  As a result, there is far less need for a hearing in this case than in a traditional ex parte TRO case, where the adversary party often has no notice of the case filed against it and no opportunity to be heard.

-12-

Case No. 1:08-2266
Gwin, J.

Moreover, granting a TRO to the Plaintiffs without a hearing would be appropriate because irreparable injury would result if the ex parte TRO were not granted.  There is currently some scheduling conflicts between a TRO hearing in this case and in another case.  Additionally, the Court recognizes that this matter must be resolved quickly as the voter registration period opens tomorrow.  Thus, the Court must promptly act to maintain the status quo in this case and to insure that the Plaintiffs do not suffer irreparable injury.

*III.A. Ohio Statutory Law Issue*

Before continuing to any potential conflicts with federal law, this Court will first resolve the parties' conflicting interpretations of the Ohio absentee voting scheme.

Ohio Revised Code section 3509.02 states that, "[a]ny *qualified elector* may vote by absent voter's ballots at an election."  O.R.C. § 3509.02(A) (emphasis added).  The Ohio Constitution says that, when an individual "has been registered to vote for thirty days, [that individual] has the qualifications of an elector."  OH Const. Art. V s. 1.

Ohio Revised Code section 3501.01(N) defines a qualified elector as "a person having the qualifications provided by law to be entitled to vote."  Section 3503.01 gives a definition of qualified voter that mimics the definition provided in Ohio's constitution, stating that,

> Every citizen of the United States who is of the age of eighteen years or over and who has been a resident of the state thirty days immediately preceding the election at which the citizen offers to vote, is a resident of the county and precinct in which the citizen offers to vote, *and has been registered to vote for thirty days*, has the qualifications of an elector and may vote at all elections in the precinct in which the citizen resides.

O.R.C. §3505.01.

-13-

Case No. 1:08-2266
Gwin, J.

The above statutes and the Ohio Constitution state that a registered voter is not a qualified voter until that registered voter has been registered for 30 days. And again, section 3509.02 states that "any qualified elector may vote by absent voter's ballots." Section 3509.02 does not govern the request or receipt of the absentee ballot, but rather, establishes a broad class of people that can vote absentee, i.e., those people that are qualified to vote. This statute only says that a registered voter must be qualified to vote when voting occurs. The voting does not take place until the election day, regardless of when the voter mails or hands in the ballot. *Millseps v. Thompson*, 259 F.3d 353, 545, 546 (6th Cir. 2001).

A separate set of statutes, however, governs the request and distribution of the absentee ballots. The legal position of the Madison County Prosecuting Attorney is that, "an absentee ballot cannot be issued to a person who is not a qualified elector." Letter of Stephen J. Pronai at 3. Section 3509.04 governs the distribution of absentee ballots by the county directors of elections. Section 3509.04 states:

> (B) Upon receipt by the director of elections of an application for absent voter's ballots that contain all of the required information, as provided by sections 3509.03 and 3509.031 and division (G) of section 3503.16 of the Revised Code, he director, if the director finds that the applicant is a qualified elector, ***shall deliver*** to the applicant in person or mail directly to the applicant by special delivery mail, air mail, or regular mail, postage prepaid, proper absent voter's ballots.

O.R.C. § 3509.04 (emphasis added). The statute clearly requires the director of elections to deliver an absentee ballot to a registered voter that has demonstrated that she "is a qualified elector."

But the statute does not say that the director of elections *can only* deliver an absentee ballot to a registered voter if the voter is a qualified voter when the request is made. The action of issuing

-14-

Case No. 1:08-2266
Gwin, J.

an absentee ballot before the registered voter is a qualified elector does not violate any law. Nothing

in the statute prevents a director of elections from the discretionary issuing of the absentee ballots.

The only restriction on an absentee ballot, is that the voter must be a qualified voter at the time of

voting. *See* O.R.C. § 3509.02.

Where section 3509.04 governs when a director *must* give an absentee ballot to a registered

voter, section 3509.03 governs the application process for an absentee ballot:

> [A]ny *qualified elector* desiring to vote absent voter's ballots at an election shall make
> written application for those ballots to the director of elections of the county in which
> the elector's voting residence is located. The application need not be in any particular
> form but shall contain all of the following:
>
> . . .
>
> (G) A statement that the person requesting the ballots is a qualified elector.

O.R.C. § 3509.03. This section, however, by its own terms, only applies to an elector that is a

qualified elector. As noted above, however, a registered voter cannot be a qualified voter until the

voter has been registered for 30 days. This provision only governs the application for an absentee

ballot for those voters that are already qualified when they request an absentee ballot. By its own

terms, this statute does not govern this.

The Madison County Prosecuting Attorney's interpretation is likely incorrect under Ohio

statutory law. Again, under Ohio law, the "secretary of state is the chief election officer of the state,

with such powers and duties relating to the registration of voters and the conduct of elections."

O.R.C. § 3501.04. The secretary of state issues "directives . . . to members of the boards [of

elections] as to the proper methods of conducting elections." O.R.C. § 3501.05(B). The Defendants

-15-

Case No. 1:08-2266
Gwin, J.

have cited no provision of Ohio law that Directive 2008-63 violates.  The Directive was validly issued pursuant to the Secretary's authority under Ohio law and must be followed by the county boards of elections.

A more troubling aspect of this case, and the reasons why this Court is considering a TRO is because the interpretation of the Madison County Board of Elections not only violates Ohio law, but conflicts with federal law and additionally has potential constitutional problems with the right to vote that will be discussed below.

### III.B.  The Ohio election law is inconsistent with the Voting Rights Act

The Plaintiffs argue that Defendant Madison County will, unless restrained, deny certain voters their right to vote using an absentee ballot.  Plaintiffs say this denial violates federal voting law and the Supremacy Clause of the United States Constitution, Article VI, Clause 2, stops such an interpretation.  *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372, 120 S.Ct. 2288 (2000) ("A fundamental principle of the Constitution is that Congress has the power to preempt state law.  Even without an express provision for preemption, we have found that state law must yield to a congressional Act in at least two circumstances. When Congress intends federal law to "occupy the field," state law in that area is preempted.  And even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute.")

The Voting Rights Act of 1970 ("VRA"), 42 U.S.C. §§ 1973aa-1, addresses residence requirements for voting, and requires that:

> [E]ach state shall provide by law for the registration or other means of qualification of all duly qualified residents of such State who apply, not later than thirty days immediately prior to any presidential election, for registration or qualification to vote

-16-

Case No. 1:08-2266
Gwin, J.

> . . . and each State shall provide by law for the casting of absentee ballots . . . by all duly qualified residents of such State who may be absent . . . and who have applied therefor not later than seven days immediately prior to such election and have returned such ballots . . . not later than the time of closing of the polls in such State on the day of such election.

§ 1973aa-1(d). The Plaintiffs argue that the Defendant Madison Country's interpretation of the Ohio election laws, requiring that a voter be registered for 30 days before being eligible for an absentee ballot, would violate this provision. Prohibiting a duly qualified resident who registered to vote 30 days before the election from requesting or submitting an absentee ballot would violate the VRA's mandate that *all* duly qualified residents be allowed to cast an absentee ballot.

Defendant Madison County responds that the VRA limits the guarantee of an absentee ballot to those who "shall have complied with the requirements prescribed by the law of such State or political subdivision providing for the casting of absentee ballots in such election." § 1973aa-1(c). Therefore, the argument continues, the State does not infringe the right to vote merely by imposing restrictions upon absentee voting. Accordingly, the Defendant Madison County says that Ohio election law can limit the class of qualified electors to those who have been registered to vote for 30 days, O.R.C. § 3505.01, without violating the VRA.

However, the two provisions of the VRA, §§1973aa-1(c)-(d), must be read in concert. The first enables states to apply some requirements for the casting of absentee ballots. But these additional requirements cannot serve to circumvent the next provision, related to the timing of applications.[6] That provision also requires "each State <u>shall provide</u> for the casting of absentee ballots [] by all duly qualified residents of such State [] <u>who have applied therefor not later than seven days</u>

---

[6] The Plaintiffs raise this argument with respect to the National Voter Registration Act, Doc. 7 at 20-21, but the reasoning applies with equal force in relation to the Voting Rights Act.

Case No. 1:08-2266
Gwin, J.

immediately prior to such election and have returned such ballots to the appropriate election official of such State not later than the time of closing of the polls in such State on the day of such election." Simply described, federal law requires Ohio to provide absentee ballots to electors who request such ballots at least seven days before the election and who will be qualified electors on election day.

If a State could define a "duly qualified" resident based on any duration of residence or registration, it could render the VRA's provision on the timing of applications hollow. There would then be no purpose to § 1733aa-1(d) and its rules on timing, except to establish minimums (i.e. to state that no resident who applied to register less than 30 days before an election should be allowed, or that no resident who applied to cast an absentee ballot less than seven days before an election should be allowed). Such a reading would be inconsistent with the purposes of the VRA, which intended to enlarge the group of enfranchised citizens. The VRA was not intended to serve as a limit on the electorate. Therefore, an interpretation of Ohio state law that requires a resident to be registered to vote for 30 days before seeking an absentee ballot would violate § 1973aa-1(d).

Because the Ohio election laws, as interpreted by Defendant Madison County, would violate the federal Voting Rights Act, the Court finds sufficient likelihood that Plaintiffs would succeed on the merits. Therefore, the Court need not now consider the other federal statutory and constitutional claims raised by the Plaintiffs.

*III.C.  The Remaining TRO Requirements*

*III.C.1. Irreparable Injury*

The Plaintiffs have adequately demonstrated an irreparable injury. As noted above, the Plaintiffs have demonstrated a likelihood of success that the 30 day qualification period conflicts with

-18-

Case No. 1:08-2266
Gwin, J.

federal statutory law. Therefore, any county board of elections that imposes this 30 day qualification period is violating those voting rights guaranteed by 42 U.S.C. § 1971aa-1. Conducting the election in violation of federal election law will cause irreparable injury to those registered voters who will be unable to receive an absentee ballot. The Supreme Court has repeatedly recognized the importance of the right to vote. *See e.g.*, *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. All other rights are illusory if the right to vote is undermined.").

Accordingly, this Court holds that the Plaintiffs' have sufficiently demonstrated an irreparable harm that will be avoided by granting the TRO.

*III.C.2. Balancing of the Harms*

The Defendants have persuasively pointed to the administrative difficulties that may arise if this Court were to later hold that the Plaintiffs were not entitled to relief on the merits. Such concerns will be addressed below in examination of the public interest in favor of the TRO. The Defendants, however, have pointed to no immediate harm that they will suffer if this Court were to grant the TRO.

*III.C.3. Public Interest*

Assessing whether the TRO would otherwise serve the public interest is a difficult question. Clarity and certainty in voting procedures serves an exceedingly important public interest. Uncertainty could disrupt the current election. If voters are not clear on the status or validity of their vote, voters may be chilled from even voting.

Currently only a single Ohio county, the Defendant Madison County, requires a 30 day

-19-

Case No. 1:08-2266
Gwin, J.

qualification period before a voter can receive an absentee ballot. The Secretary of State issued Directive 2008-63 on August 13, 2008. Voter expectations will be in line with that Directive. The TRO sought by the Plaintiffs seeks to ensure that absentee voting is conducted uniformly around the state, and asks this Court to require a single county to follow the absentee procedures that every other county in the state will be following.

Only Plaintiffs's motion for a temporary restraining order stands ripe for decision. A hearing upon Plaintiffs' application for a preliminary injunction will follow. If Plaintiffs lose their motion for preliminary injunction, absentee ballots improperly received could be identified, removed and the electors could be told that their ballot had not been accepted and another ballot would need be submitted. In contrast, if the Madison County Board of Elections refuses to allow absentee voting, no easy remedy exists for those electors who, for one reason or another, are unable to vote in person on election day. Described otherwise, greater potential harm accompanies a denial of the right of recent registrants to vote with absentee ballots than will likely result if such ballots are allowed even if it is later determined that such voting should not have occurred.

These question, among other, demonstrate the possibility of a massive administrative nightmare for the State of Ohio in the coming election.

Secretary of State Brunner's Directive 2008-91 specifically notes that Ohio law has a procedure for challenging an absentee ballot. Directive 2008-91. Section 3503.24 generally allows any "qualified elector" to "challenge . . . the right to vote of any registered elector." O.R.C. § 3503.24. The Directive orders that "must be heard and adjudicated by boards of elections before Election Day," Directive 2008-91, although a possibility exists that even with all reasonable effort

Case No. 1:08-2266
Gwin, J.

county boards of elections will not meet this deadline.

As to the segregation of those absentee ballots that are the subject of this case, Directive 2008-91 requires county boards of elections to "provide optical scan paper absentee ballots with identification envelopes to voters who both register and vote on the same day . . . during the overlap period."

The statutory challenge procedure and the several Directives mentioned above address some but not all of the administrative concerns.

These administrative concerns are troubling.  The Defendants, however, have not identified any public interest inherent in the 30 day qualification period that will be harmed by granting the TRO..  The Defendants have not identified any other public enshrined within the 30 day registration period other than the prevention of voter fraud.  But Directive 2008-63 has already built in some protection against this fraud.  The county boards of elections are directive to develop procedures to issue an absentee ballot after registration "*reserving the right to delay registration and immediate absentee voting if a board is not satisfied as to validity of the application and the applicant's qualifications*."  Directive 2008-63.

The Plaintiffs have sufficiently demonstrated that the public interest favors granting the TRO.

## IV.  Conclusion

One county has decided to apply election procedures different than every other county in Ohio, and in contravention of a Directive issued by the Ohio Secretary of State.  The voting procedure proposed by this single county likely violates federal statutory law that was enacted to protect the right to vote.  Clarity and certainty in the voting process will be furthered by granting the

-21-

Case No. 1:08-2266
Gwin, J.

TRO.  While potential administrative problems may arise if this Court ultimately later determines that

the Plaintiffs were not entitled to relief on the merits, those concerns are not sufficiently immediate

enough to trump the public's interest in uniform election procedures that comply with federal law.

This Court issues a temporary restraining order compelling the Madison County Board of Elections

to comply with Directive 2008-63.

　　　　　IT IS SO ORDERED.


Dated: September 29, 2008　　　　　　　s/　　　James S. Gwin
　　　　　　　　　　　　　　　　　　　　JAMES S. GWIN
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE